UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALISA HOUSE,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>MITCHELL'S NY and MITCHELL<br>NEWMAN, individually<br><br>　　　　　Defendants. | Case No.: _____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PRELIMINARY STATEMENT

1. Plaintiff Alisa House ("Plaintiff" or "Ms. House") brings this action against Defendant Mitchell's NY ("Mitchell's") for (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. L. §§ 290, *et seq.* ("NYSHRL"), (the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"); (2) retaliation for engaging in protected activity in violation of Title VII, the NYSHRL and the NYCHRL; (3) failure to pay minimum wage in violation of the New York Labor Law ("NYLL") §§ 650 *et seq.*; and (4) failure to provide Plaintiff with lawfully required notices of pay rates and pay statements in violation of the New York Notice and Record Keeping Requirements, NYLL § 195 *et seq.*

2. Plaintiff also brings this action against Defendant Mitchell Newman individually pursuant to the NYSHRL and the NYCHRL for (1) sexual harassment, (2) retaliation for engaging in protected activity, and (3) aiding and abetting those violations.

## JURISDICTION AND PROCEDURAL REQUIREMENTS

3. This Court has jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL and NYLL claims pursuant to 28 U.S.C. § 1367. Venue in this District is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) in that the events in violation of Title VII took place in the State of New York.

4. Plaintiff has exhausted all administrative remedies in a timely manner. She filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") on November 8, 2019, within 300 days of the unlawful acts alleged. The EEOC issued a Right to Sue notice on August 10, 2020.

## PARTIES

5. Plaintiff is an African American female. She resides in New York, NY. She worked for Defendant Mitchell's for nearly six years, from approximately September 2013 to April 2019.

6. Throughout her employment Ms. House met the definition of an "employee" under Title VII, the NYSHRL, the NYCHRL. Ms. House met the definition of "employee" under the NYLL from the date of  hire until November 28, 2016, when the definition of employee was amended with respect to newspaper deliverers.

7. Mitchell's is a delivery company headquartered at 31-10 48th Avenue, Long Island City, New York 11101 that operates throughout the tri-state area. Mitchell's receives, stores, transports and delivers goods, including newspapers, magazines, beverages, razors and other specialty items, that have moved through the chain of interstate commerce to residential and business customers, as set forth in the company's internet homepage. See, https://www.mitchellsny.com/about (accessed October 27, 2020).

8. Mitchell's is an employer within the meaning of all applicable statutes and was Plaintiff's employer at the time of the matters alleged.

9. On information and belief, Mitchell Newman is, and at all relevant times was,   a principal owner of Mitchell's and the President of its affiliated company, Mitchell's NY Logistics. At all relevant times he had final authority over all the activities of the company and, specifically, had power to do more than carry out personnel decisions made by others.

## FACTS

### Ms. House's Employment with Mitchell's

10. Plaintiff was hired in or about September 2013 to work for Mitchell's as a "last mile" delivery driver.

11. The job required her to arrive at the Mitchell's warehouse in Queens at 2 a.m. seven days a week and to work the 2 a.m.-7 a.m. shift making deliveries to Mitchell's residential customers on a route in Manhattan. Beginning in or about the end of January 2019 her job changed in that she worked five rather than seven days a week, making deliveries to Mitchell's commercial rather than residential customers. Throughout her employment she was paid a flat rate of $30 per day. While delivering to residential customers, she was also paid a bonus of $300 every 12 weeks.

12. Upon arriving at Mitchell's warehouse, she was required to clock in, and then work alongside several hundred other employees, assembling and labeling packages of newspapers and magazines for delivery to Mitchell's customers along the route that Mitchell's assigned her. The newspapers she was required to deliver included The Washington Post, the Wall Street Journal, The New York Times, USA Today, The Daily News, and the Los Angeles Times.

13. Beginning in or around 2017, Mitchell's expanded her job duties to include delivery of various other products to their customers, including beverages, Harry's Razors, and grooming and beauty products from Birch Box. When she began delivering parcels, Mitchell's required her to install an "app" on her phone and to scan each parcel before she left the warehouse and again when she had delivered the parcel.

14. The newspapers and other products that Plaintiff and the other delivery drivers were required to deliver traveled in interstate commerce. She and the other delivery drivers were the last mile deliverers of such products to their ultimate recipients, who had ordered them from Mitchell's.

15. Plaintiff applied for the job and was hired on the premises of Mitchell's warehouse, where she spoke with and was hired by a managerial employee of Mitchell's named Fossil (phonetic spelling). She was given to understand that the job was for an indefinite period of time, not seasonal work or for a specific limited assignment.

16. Fossil gave Plaintiff a multi-page contract which she had only a few minutes to review before signing. She was not permitted to retain a copy of the contract at that time or at any time thereafter.  Nor, throughout her work for Mitchell's, was she ever given a copy of any other contract.

17. Upon information and belief, the contract she was given in 2013 did not bear the name of Mitchell's but instead bore the name of Trucking Support Services, LLC dba CRS ("CRS"). CRS is a third-party payroll company headquartered at 333 Glenn St., Suite 901, Glens Falls, NY 12801. Fossil never mentioned CRS to Plaintiff or said what, if any, its role in Plaintiff's employment might be.

18. Fossil told Plaintiff that she would be working for Mitchell's. He told her the nature of her job duties, the hours she would have to work, and that she would be paid $30 per day.

19. Throughout Plaintiff's employment, CRS had no involvement in directing or controlling her work.

20. Plaintiff's only contact with CRS was that CRS issued her paycheck and arranged for her to have occupational accident insurance. On information and belief, Mitchell's provided CRS with the funds to pay Plaintiff.

21. The paychecks that Plaintiff received did not include any deductions for income tax or employment taxes. At the end of each year, CRS reported Plaintiff's earnings on a 1099 form rather than a W-2 form. These paystubs and 1099 forms indicate that Mitchell's and CRS characterized Plaintiff as an independent contractor rather than as an employee. In doing so, Mitchell's and CRS mischaracterized her work status since, throughout her employment, Mitchell's directly controlled her work, as described more specifically below.

22. Employees of Mitchell's told her what her job duties involved, provided the materials with which she worked, trained her, and supervised her work.

23. At the warehouse, Mitchell's employees would bring the newspapers and packaging materials to Plaintiff's table. She would label and bag the items under supervision by Mitchell's supervisors, who told her exactly how she was to do the work.

24. Mitchell's managers assigned her the route on which she was to make deliveries. Until shortly before Mitchell's fired her for complaining about sexual harassment, whenever she incurred parking tickets while delivering newspapers on her route, she would give the tickets to a Mitchell's supervisor named Dennis, and Mitchell's would pay the parking tickets.

25. Mitchell's supervisors gave Plaintiff their cell phone numbers and told her to call a supervisor if she had any problem making a delivery. In accordance with that instruction, if a problem occurred on her route, Plaintiff would call a Mitchell's supervisor who would handle the problem.

26. When a customer had a complaint about a delivery (such as a complaint about the placement of the label on the newspaper), the customer would call Mitchell's, not Plaintiff. Mitchell's supervisors would then either instruct Plaintiff on how to respond to the problem or would deal with the problem themselves, for example, by bringing the customer a replacement newspaper from the warehouse.

27. Based on the facts above, Plaintiff met the standards for an employee of Mitchell's, rather than an independent contractor, under Title VII, the NYSHRL and the NYCHRL. Further, she met the standards for an employee under  the New York Labor Law at all times up to November 28, 2016, when the definition of employee in the NYLL was amended with respect to newspaper deliverers.

**Hostile Work Environment: Sexual Harassment**

28. Beginning in or around December 2013, Plaintiff was subjected to an ongoing pattern of severe sexual harassment by her supervisor, Manager Usongo (phonetic spelling), an employee of Mitchell's.

29. The first such occasion occurred in December 2013, when Manager Usongo drove Plaintiff from the Mitchell's warehouse in Queens to her delivery route in Manhattan because her car had broken down. As soon as Plaintiff entered Manager Usongo's car, he put his hand on her thigh and crotch and said, "I like you."

30. The next day, Plaintiff told her other supervisor, Manager Saba, that she did not want to work with Manager Usongo because he had touched her. Manager Saba called Manager Usongo over and spoke to him in a language Plaintiff does not speak. After this incident, Manager Usongo stayed away from Plaintiff for three to four weeks.

31. However, in or around January 2014, Manager Usongo began to verbally harass Plaintiff on an almost-daily basis, making comments about her appearance, her body, and his sexual desires. This conduct was so severe and pervasive that it created a work environment that a reasonable person would consider hostile and abusive and that Plaintiff did find to be hostile and abusive.

32. During the first incident of verbal harassment, Plaintiff told Manager Usongo that she had a boyfriend and family, and that she did not want to talk to him. During subsequent incidents, Ms. House tried to avoid Manager Usongo and not respond to the harassment.

33. Manager Usongo's constant harassment during this time included statements such as: "You make my dick hard"; "I want to get with you"; "Your ass got fat"; "I like you, why are you giving me a hard time"; "When I go home, I think about you and the way you look."

34. When Manager Usongo made these comments, no Mitchell's manager ever intervened to tell Manager Usongo to leave Plaintiff alone. Upon information and belief, Mitchell's did not take remedial action to remedy the harassment.

35. In 2014, Manager Usongo began to follow Plaintiff on her delivery route, driving from the Mitchell's warehouse in Queens to Manhattan in order to trail her. Manager Usongo would roll down the windows to smile and blow kisses at Plaintiff as she delivered her papers. It was unusual for managers to follow delivery drivers. Manager Usongo was the only manager who followed Plaintiff on her route.

36. After several incidents of being followed by Manager Usongo, Plaintiff told Manager Saba that Manager Usongo was following her. Manager Saba responded, "Lisa, you make everything a problem."

37. On information and belief, neither Saba nor any other Mitchell's employee took action to investigate or remedy the harassment.

38. Throughout 2014 Manager Usongo would repeatedly call Plaintiff while she was working at her day job as a lunch helper in a high school. Plaintiff would not answer these calls.

39. Throughout 2014, Manager Usongo touched Plaintiff in an inappropriate and/or sexual manner nearly every morning while she worked in the warehouse. Manager Usongo repeatedly walked past her table and brushed his crotch and/or hands over her back and waist and touched her bottom or back. While touching her, Manager Usongo would sometimes comment on her bottom, waist, or the curve of her back. Manager Usongo would also regularly lean over Plaintiff as she clocked in to whisper suggestive comments to her.

40. Plaintiff demonstrated by words and demeanor that Manager Usongo's sexual harassment was upsetting to her. For example, she would lean away from Manager Usongo when he made these advances, and she began to wear baggy clothing to work in an effort to avoid Manager Usongo's notice. However, no Mitchell's manager ever said or did anything to help her or tell Manager Usongo to stop.

41. Upon information and belief, Manager Usongo's inappropriate touching was visible to Plaintiff's coworkers and managers. However, on information and belief, Mitchell's neither investigated nor took any action against Manager Usongo for sexually harassing Ms. House.

42. In or around January 2015, Manager Usongo grabbed Plaintiff by the waist while she was working at her table in the Mitchell's warehouse. Plaintiff yelled loudly and said she was

tired of his violating her. Two other managers, Boya and Dennis, escorted Plaintiff to another office in the warehouse after they heard her yell. Plaintiff told both managers that she was tired of Manager Usongo's harassment. Plaintiff also told them that she did not want Manager Usongo to have her phone number because he was harassing her.

43. After this incident, Manager Usongo's harassing behavior stopped for about one month. However, beginning in or about March 2015, his harassing behavior resumed and even increased. Manager Usongo touched Plaintiff on her back and waist nearly every day and would purposefully walk past Plaintiff so he could brush up against her body.

44. After Manager Usongo's harassment began again in March 2015, Plaintiff complained once again to Manager Boya. He told Plaintiff that her complaints were "old news." The harassment continued on a near-daily basis.

45. On information and belief, Mitchell's had no policies and procedures regarding sexual harassment and never provided any training to its employees in regard to that subject.

46. Mitchell's never informed plaintiff of any company standards regarding sexual harassment and never informed her of any procedures to follow in the event she was subjected to sexual harassment.

47. Upon information and belief, Mitchell's failed to investigate or take prompt remedial action to address Manager Usongo's continued harassment of Ms. House.

48. Beginning in 2016, Manager Usongo began to wait for Plaintiff every day as Plaintiff exited the warehouse to walk to her car to load up the newspapers and parcels. On one occasion, he whispered to her, "Psst—I love you." Plaintiff continued to ignore his harassment.

49. On another occasion in 2016, Manager Usongo approached Plaintiff as she was loading her car and blocked the driver's side door of her car, so Plaintiff was unable to get in. He

again told Plaintiff he loved her. Plaintiff asked him why he was following her, and he told Plaintiff to give him a chance. He said she would "like it." Eventually he moved aside, and Plaintiff got in her car and drove away.

50. Manager Usongo's harassing behavior and touching continued without interruption until August 28, 2018, when Plaintiff temporarily stopped working at Mitchell's while she underwent a hysterectomy.

51. When Plaintiff saw Manager Usongo upon her return, he told Plaintiff that it was good that she couldn't have any more babies, and asked Plaintiff, "Can I have some?" Plaintiff interpreted this question as Manager Usongo requesting to have sex with her.

52. Plaintiff was humiliated and shocked when she realized that Usongo and other managers knew she had a hysterectomy which she considered private medical information.

53. Manager Usongo's physical touching and verbal harassment of Plaintiff was so severe and/or so pervasive as to materially affect the terms and conditions of her employment.

54. Manager Usongo's physical touching and verbal harassment of Plaintiff continued through approximately the end of January 2019. Throughout her employment, this conduct caused Plaintiff extreme emotional distress, which she continues to suffer and for which she is regularly seeing a therapist.

**Retaliation**

55. In or around September 2018, while Ms. House was on medical leave after the hysterectomy, her car was booted. Since Ms. House was unaware of having any unpaid parking tickets, she looked up her vehicle registration on the Department of Motor Vehicles website and discovered that she had over a dozen parking tickets from March–July 2018. The dates and times

10

on the parking tickets indicated that they had been issued on her delivery route, but Ms. House had never seen any tickets placed on her car during that period.

56. It was very common for Mitchell's delivery drivers to receive tickets while on their routes for double-parking, parking in a bus zone, or parking near a fire hydrant, since there was often no other parking available along delivery routes. When this happened, it was common for Mitchell's to pay the tickets. Up until this time, Manager Saba had instructed Ms. House to bring parking tickets she received on the delivery route to Manager Dennis, because Mitchell's would pay for the parking tickets. During Ms. House's employment with Mitchell's, Mitchell's paid for at least ten of Ms. House's parking tickets.

57. After finding out that her car had been booted, Ms. House immediately called Manager Dennis and asked that Mitchell's pay for the parking tickets. Dennis told Ms. House that he couldn't help with the tickets because she was not working at that time. He refused to discuss the issue further over the phone, insisting instead that Ms. House meet at the worksite in order to discuss the tickets.

58. Because Ms. House urgently needed to resolve the ticket issue and reclaim her booted car, she resumed working for Mitchell's only two weeks after her surgery, even though her doctor had told her to take eight weeks off. When Ms. House arrived at work for the first time after surgery, she spoke to Manager Dennis about reimbursing the tickets. He told Ms. House that he would notify the head of Mitchell's, Mitchell Newman, about the situation. The next day, Dennis gave Ms. House Mitchell Newman's phone number so that Ms. House could call him.

59. Ms. House called Mitchell Newman and asked him to pay her parking tickets, as the company had done in the past. Mr. Newman told Ms. House that the company would pay for the

tickets. However, when Ms. House followed up with Mr. Newman several days later, he told her that the company would not pay these tickets and that she would have to pay them herself.

60. On information and belief, no other delivery worker was required to pay for parking tickets that he/she received while on the job. On information and belief, Mitchell's treated Ms. House differently in this regard because she had complained of sexual harassment by Manager Usongo.

61. On information and belief, the amount due on the parking tickets eventually grew to over $3,500, and Ms. House's car was seized by New York City. Ms. House no longer has use of a vehicle.

62. In or around mid-January 2019, Ms. House learned of a job opening on another route that would enable her to assemble the newspapers and other delivery items in a section of the warehouse far away from Manager Usongo. Ms. House told Managers Michelle and Dennis that she wished to be transferred to this new section and route in order to avoid Manager Usongo's harassment, and she was allowed to transfer. Ms. House requested this transfer even though it required her to downgrade from a 7–day schedule to a 5–day schedule, and thus earn less money, but she was willing to take the loss of pay in order to avoid Manager Usongo's harassment.

63. When Plaintiff told Manager Boya of her move between sections, she explained that it was because of Manager Usongo's harassment. Manager Boya excused Manager Usongo's harassment by saying that Usongo was a man, Ms. House was a woman, and that Usongo "has needs."

64. In or around mid-April 2019, as Ms. House entered the warehouse for work, Manager Kahlua approached Ms. House and accused her of throwing newspapers in the garbage instead of delivering them to the businesses on her route. He told Ms. House that the head of the company,

Mitchell Newman, had sent someone to follow her on her route. Manager Kahlua told Ms. House to go home and that she was no longer employed by Mitchell's.

65. Manager Kahlua's assertion was false. Ms. House never threw away papers on her delivery route.

66. The next day, Ms. House called Mitchell Newman. He told Ms. House that the company would not let her work for them anymore because she had thrown papers in the garbage—which was not true—and because Ms. House had complained about being harassed by a manager.

67. On information and belief, Mitchell's fired Ms. House because of her complaints about sexual harassment.

68. As a result of Mitchell's retaliation against her for complaining of sexual harassment, Ms. House has suffered loss of earnings, the cost of the parking tickets and associated fines and/or penalties that Michell's refused to pay as well as the eventual loss of her car, and emotional distress.

## **FIRST COUNT**

### **Sexual harassment under Title VII**
### **42 U.S.C. § 2000e-2**
### **against Mitchell's.**

69. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein. Defendant Mitchell's tolerated and condoned the hostile work environment in which Plaintiff was subjected to unwanted touching, repeated verbal harassment and other sexual harassment by her supervisor, Manager Usongo. Mitchell's failed to take any remedial action to prevent or remedy the harassment by the Mitchell's manager who

13

continuously harassed Ms. House, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2.

70. As a result of Mitchell's unlawful acts, Ms. House has suffered damages including past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## SECOND COUNT

### Retaliation under Title VII
### 42 U.S.C. § 2000e-3(a)
### against Mitchell's.

71. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

72. Based upon the facts alleged above, Defendant Mitchell's subjected Plaintiff to adverse employment actions for the protected activity of complaining to Mitchell's management about Manager Usongo's harassment, in violation of Title VII of the Civil Rights Act, 42.U.S.C. § 2000e-3(a).

73. As a result of this violation, Plaintiff suffered damages including past and future lost wages and benefits, the cost of the parking tickets and associated fines and/or penalties that Michell's refused to reimburse as well as the eventual loss of her car, past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## THIRD COUNT

### Sexual harassment under NYSHRL,
### NY Exec. Law § 296(1)(a),
### against Mitchell's and Mitchell Newman Individually.

74. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

14

75. Defendant Mitchell's and Mitchell Newman individually are both liable under NYSHRL §296(1)(a) for the sexual harassment by supervisor Usongo.

76. Defendants had actual or constructive knowledge of Usongo's unlawful actions because (1) Ms. House complained about Usongo's harassment to many of the supervisors at Mitchell's, (2) Usongo's harassment of Ms. House was open and notorious within the Mitchell's warehouse, and (3) Mitchell Newman acknowledged to Ms. House that he was aware of her complaints about Usongo, and Defendants failed to take remedial action to prevent and remedy the harassment.

77. As a result of the sexual harassment, Plaintiff has suffered damages including past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## FOURTH COUNT

### Retaliation under NYSHRL
### NY Exec. Law § 296(7)
### against Mitchell's and Mitchell Newman Individually.

78. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

79. The actions of Defendants subjecting Plaintiff to unlawful retaliation for her complaints of sexual harassment, violated the New York State Human Rights Law, Executive Law § 296(7).

80. As a result of Defendants' action, Plaintiff has suffered damages including past and future lost wages and benefits, the cost of unreimbursed parking tickets, the associated fines and/or penalties charged to her and the ultimate loss of her car, as well as past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## FIFTH COUNT

**Sexual harassment under NYCHRL**
**N.Y.C. Admin. Code § 8-107(1)(a) and § 8-107(13)(a)–(b)**
**against Mitchell's and Mitchell Newman Individually.**

81. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

82. Defendant Mitchell's and Mitchell Newman individually are both liable under

NYCHRL § 8-107(1)(a) and § 8-107(13)(a)–(b) for the sexual harassment by supervisor Usongo.

83. Defendants had actual or constructive knowledge of Usongo's unlawful actions

because (1) Ms. House complained about Usongo's harassment to multiple other Mitchell's

supervisors, (2) Usongo's harassment of Ms. House was open and notorious within the

Mitchell's warehouse, and (3) Mitchell Newman acknowledged to Ms. House that he was aware

of her complaints about Usongo, and Defendants failed to take action to prevent and remedy the

harassment.

84. As a result of Defendants' action, Plaintiff has suffered damages including past and

future emotional distress, attorneys' fees, and the costs of bringing this action.

## SIXTH COUNT

**Retaliation under NYCHRL**
**N.Y.C. Admin. Code § 8-107(7)**
**against Mitchell's and Mitchell Newman Individually.**

85. Plaintiff repeats and realleges each and every allegation contained in the paragraphs

above as if fully set forth herein.

86. The actions of Defendant employers Mitchell's and Mitchell Newman subjecting

Plaintiff to unlawful retaliation for her complaints of sexual harassment, violated NYCHRL § 8-

107(7).

87. As a result of Defendants' action, Plaintiff has suffered damages including past and future lost wages and benefits, the cost of unreimbursed parking tickets and associated fines and/or penalties as well as the ultimate loss of her car, past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## SEVENTH COUNT

**Aiding and Abetting Sexual Harassment and Retaliation under NYSRL**
**NY Exec. Law § 296(6)**
**against Mitchell Newman Individually.**

88. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

89. Based on the allegations above, Mitchell Newman individually is liable for aiding and abetting the sexual harassment of and retaliation against Plaintiff in violation of the New York State Human Rights Law, Exec. Law § 296(6).

90. As a result of Defendants' action, Plaintiff has suffered damages including past and future lost wages and benefits, the cost of unreimbursed parking tickets and associated fines and/or penalties as well as the ultimate loss of her car, past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## EIGHTH COUNT

**Aiding and Abetting Sexual Harassment and Retaliation under NYCHRL**
**N.Y.C. Admin. Code §§ 8-107(6)**
**against Mitchell Newman Individually.**

91. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

92. Based on the allegations above, Mitchell Newman individually is liable for aiding and abetting the sexual harassment of and retaliation against Plaintiff in violation of the New York City Human Rights Law, §§ 8-107(6).

93. As a result of Defendants' actions, Plaintiff has suffered damages including past and future lost wages and benefits, the cost of unreimbursed parking tickets and associated fines and/or penalties as well as the ultimate loss of her car, past and future emotional distress, attorneys' fees, and the costs of bringing this action.

## NINTH COUNT

### Failure to Pay Minimum Wage
### N.Y. Labor Law §650 et seq.
### against Mitchell's.

94. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

95. By paying Plaintiff $30 per day for a five-hour shift, together with a bonus of $300 every 12 weeks, and deducting payments for deductions for occupational accident insurance, Defendants violated the New York Minimum Wage Law, NYLL §650 et seq, from the date she was hired until November 28, 2016.

96. Defendants' violation of the Minimum Wage Law was willful.

## TENTH COUNT

### Failure to Provide Required Notices of Pay rates and Pay statements
### N.Y. Labor Law §§ 195(1)(a) and (3)
### against Mitchell's.

97. Plaintiff repeats and realleges each and every allegation contained in the paragraphs above as if fully set forth herein.

98. Defendants never provided Plaintiff with the notice of pay rates and pay statements required by NYLL §195.

99. By failing to provide such notices, Defendants violated NYLL §195.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this court award her:

(a)  Back pay from the date her employment was terminated, for violation of Title VII, the NYHRL and the NYCHRL;

(b) The cost of unreimbursed parking tickets and associated fines and/or penalties that Plaintiff paid or was subjected to and the ultimate loss of her car, for violation of Title VII, the NYHRL and the NYCHRL;

(c) Compensatory damages for emotional distress, for violation of Title VII, the NYHRL and the NYCHRL;

(d) Punitive damages for willful violation of Title VII, the NYHRL and the NYCHRL;

(e) Reasonable attorneys' fees and the costs of this action under Title VII, the NYHRL and the NYCHRL;

(f) Unpaid minimum wages due under the NYLL;

(g) Damages due to wage notice and wage statement violations under NYLL;

(h) Liquidated damages under the NYLL;

(i) Prejudgment interest;

(j) Such other and further relief as the court may deem just and proper.


Dated:          November _____, 2020
                New York, NY

                                    Respectfully submitted,

                                    *By:*

                                    The Legal Aid Society

_____

*Lizabeth Schalet*

Janel Sabel, Attorney-in-Charge
By:  Lizabeth Schalet
The Legal Aid Society
199 Water Street
New York, NY 10038
212-577-3300

Laura Sager
Washington Square Legal Services, Inc.
245 Sullivan Street, Fifth Floor
New York, NY 10012
212-998-6442

Attorneys for Plaintiff